Anna Y. Park, CA SBN 164242
Sue J. Noh, CA SBN 192134
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA  90012
Telephone:  (213) 894-1083
Facsimile:  (213) 894-1301
E-mail: lado.legal@eeoc.gov

Nechole Garcia, NV SBN 12746
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
333 Las Vegas Boulevard South, Suite 8112
Las Vegas, Nevada 89101
Telephone: (702) 388-5072
Facsimile: (702) 388-5094

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) Case No. |
| | ) |
| | ) |
| Petitioner, | ) **PETITIONER EEOC'S** |
| | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES SUPPORTING ITS** |
| v. | ) **APPLICATION FOR ORDER TO** |
| | ) **SHOW CAUSE WHY ITS SUBPOENA** |
| | ) **SHOULD NOT BE ENFORCED** |
| SBEEG HOLDINGS, LLC dba HYDE | ) |
| BELLAGIO, SPOONFUL MANAGEMENT LV, | ) |
| LLC, | ) |
| Respondents. | ) |

## I.    INTRODUCTION

The U.S. Equal Employment Opportunity Commission ("EEOC or the "Commission")

brings this subpoena enforcement action seeking an Order to Show Cause why the EEOC's

subpoena served on SBEEG Holdings, LLC dba Hyde Bellagio and Spoonful Management LV,

LLC (hereinafter collectively referred to as "Respondents") should not be enforced.  The EEOC

is currently investigating a charge of sexual harassment and retaliation filed against Respondents under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et. seq. ("Title VII"). Specifically, in February 2017, Katie Clayton ("Charging Party") filed a charge of discrimination alleging that Respondents subjected her and a class of similarly situated individuals to sexual harassment and retaliation.   When Charging Party applied for a cocktail waitress job at Respondents' Hyde Bellagio night club, a hiring official sent Charging Party a text asking for sex and nude pictures.  Because Charging Party did not comply, Respondents did not hire her. Accordingly, the EEOC subpoenaed information regarding the hiring officials involved in Ms. Clayton's application process, as well as information on Respondents' broader hiring processes for job openings during the time frame before and after Charging Party's application.

During its investigation, the EEOC issued Subpoena No. LV-17-03.  The Subpoena's first request seeks an organizational chart reflecting Respondents' national and/or local organizational structure.   The Subpoena's second request seeks Respondents' total number of employees. Subpoena request numbers three and four ask for all documents submitted to Respondents by any persons who sought employment from July 29, 2014 to the present, and all documents created as part of the selection process.   Request numbers five through seven request all documents reflecting job openings, their job descriptions, rates of pay, and the names and job titles of the screening officials from July 29, 2014 to the present. Request number eight asks for a list of Respondents' employees from July 29, 2014 to the present, including their names, addresses, sex, telephone numbers and email addresses.   Request nine seeks all complaints Respondents received regarding their hiring process and/or harassment. Subpoena request ten requests the complete personnel file, including any informal desk files or notes kept by managers, for Charging Party, General Manager Mike Hernandez (the manager who interviewed her), Promotions Manager Abe Ismail (who sent Charging Party texts requesting sex and nude pictures in exchange for the opportunity to work at the Hyde Bellagio night club), and Director of Operations Gerald Pacheco and General Manager Ismail Saleem (two managers whom Mr. Ismail identified as wanting nude pictures of applicants).  Request number eleven asks for all

communications pertaining to Charging Party, and request number twelve asks for all documents reflecting any agreements between Respondents and Bellagio Hotel and Casino.

While Respondents intermittently produced some responsive information and documents, their refusal to fully comply has delayed and hampered the investigation of this charge. As addressed below, the Subpoena seeks documents and information relevant to the EEOC's investigation into whether Respondents subjected the Charging Party and similarly situated employees to sexual harassment and retaliation. Therefore, the EEOC applies to this Court to issue an Order to Show Cause why the Subpoena should not be enforced.

## II.      STATEMENT OF FACTS

### A.   Charge Filing and EEOC's Efforts to Obtain Relevant Information without a Subpoena.

On February 9, 2017, Charging Party filed a charge of discrimination against Respondents with the EEOC's Las Vegas Local Office. (Ex. A, Clayton's Charge of Discrimination). [1] There, Charging Party alleges that Respondents subjected her to sexual harassment and retaliation, in violation of Title VII. *Id*. Specifically, Charging Party alleges that she interviewed for the Cocktail Waitress position[2] with a manager named "Mike" whose last name and position were unknown.[3] *Id*. Shortly after the interview, Charging Party received text messages from a Promotions Manager[4] named Abe Ismail, informing Charging Party that she would be hired if she performed sexual favors. *Id*. In his text messages, Promotions Manager Ismail also asked Charging Party to provide nude photos that he could forward to Director of Operations Gerald Pacheco and General Manager Ismail Saleem. Promotions Manager Ismail also indicated to Charging Party in his text messages that other women had been hired by Respondents after agreeing to perform sex acts on male managers. Charging Party further alleges that she refused the Promotions Manager's offer and was not hired for the Cocktail Waitress

---

[1] The exhibits are attached to Decl. of Counsel and Exhibits Supp. EEOC's Appl. Order to Show Cause ("Decl. of Counsel"), which is filed concurrently with this memorandum of points and authorities.
[2] Although Charging Party called the position "Cocktail Waitress," according to Respondents, the position is properly titled "Marketing Server Host."
[3] The EEOC's investigation revealed that "Mike" is Respondents' General Manager Mike Hernandez.
[4] According to Respondents, the official title for this position is "Promotions Supervisor Host."

position. *Id.* Charging Party subsequently amended her charge on March 6, 2017 to include a class allegation. (Ex. B., Clayton's Amended Charge of Discrimination).

On March 20, 2017, Respondents submitted their position statement in response to the charge of discrimination.  (Ex. C, Respondents' March 20, 2017 Position Statement). There, Respondents identified Spoonful Management LV, LLC as the employing entity for SBEEG Holdings, LLC dba Hyde Bellagio but failed to identify the employer(s) for the decision-makers.[5] Respondents produced redacted versions of the texts from Mr. Ismail to Charging Party, but argued that they are not liable because once they became aware of the sexual harassment, they "immediately investigated the incident and promptly discharged [Promotions Manager Ismail] from employment with Spoonful." *Id.*  Respondents did not directly address Charging Party's retaliation claim, except to state that "[f]or internal management reasons, the decision was made not to hire any Marketing Server Hosts at that time." *Id*. at 2.  Accordingly, the EEOC's subpoena seeks relevant information regarding the decision-making that resulted in Charging Party not being hired, as well as whether others who applied before and after Charging party were subjected to similar demands for sexual favors as a condition of employment.

Thereafter, on March 21, 2017, the Commission sent a Request for Information ("RFI") to Respondents requesting information and records relevant to the subject charge of discrimination. (Ex. E, EEOC's March 21, 2017 RFI).   The RFI asked for various categories of information relevant to the charge of discrimination, including the company's anti-harassment and anti-retaliation policies, the total number of employees from July 29, 2014 to present, an organizational chart, a list of all female employees who sought employment and/or applied with Respondents from July 29, 2014 to the present, and information regarding anti-harassment and anti-retaliation training provided to employees. *Id.*at 1-2.

The RFI also sought sexual harassment complaints made to Respondents from July 29, 2014 to the present. *Id.* at 5. The RFI asked for the personnel files for the Charging Party,

---

[5] In response to this additional information, Charging Party amended her charge one additional time on April 5, 2017 to add Spoonful Management LV, LLC as a Respondent. (Ex. D, Clayton's Second Amended Charge of Discrimination).

Productions Manager Abe Ismail, and the two managers who Productions Manager Ismail indicated in his text messages would be interested in seeing nude pictures of the Charging Party, namely Director of Operations Gerald Pacheco and General Manager Ismail Saleem. *Id.* The RFI also sought the personnel file for the manager that conducted the Charging Party's interview named "Mike," who was later identified as General Manager Mike Hernandez. *Id*. The RFI further requested information regarding Respondents' business relationship with the Bellagio Hotel and Casino. *Id.* Additionally, the RFI sought the details of the Charging Party's interview with Respondents. *Id.*at 6.

Respondents submitted their response to the RFI on May 5, 2017. (Ex. F, Respondents' May 5, 2017 Response to the RFI).  Respondents provided copies of their hiring process policy, their total number of employees in 2017, and an excerpt from their employee handbook containing Respondents' anti-harassment policy. However, Respondents did not provide a complete response to any other RFI request, instead objecting to the remaining requests on several different grounds. Respondents objected that the request for an organizational chart was not relevant to the investigation. *Id*. at 2-3.  While Respondents provided the total number of their employees for 2017, it failed to provide the number it had from July 29, 2014 to the present as requested in the RFI. *Id.* at 3.  Respondents contended that the request for female applicants was overbroad and not relevant to the charges. *Id*. at 6. Respondents objected that the request for any sexual harassment complaints from July 29, 2014 to the present was overbroad, called for speculation, and irrelevant. *Id*. at 8.

Respondents also objected that the request for personnel files was overbroad, irrelevant, and confidential. *Id*. at 8-9.  Respondents contended that the request regarding their business relationship with the Bellagio Hotel "assumes facts, lacks foundation and seeks information not relevant to charge on investigation." *Id*. at 10.  Respondents refused to provide any information regarding their interview with Charging Party, objecting that is "assumes facts and calls for speculation," and is "overbroad and invades the right to privacy of both Respondents and non-party individuals." *Id*. at 13.

**B.   The EEOC Issued a Subpoena to Obtain Relevant Information on Witnesses and Other Potential Victims of Sexual Harassment and Retaliation.**

Because Respondents refused to provide information responsive to the RFI, the Commission served Subpoena No. LV-17-03 upon Respondents via certified mail on July 31, 2017.  (Ex. G, EEOC Subpoena No. LV-17-03 with proof of service).  However, Respondents' attorney claimed she never received the Subpoena.[6] (Decl. of Cnsl. at ¶6).  Accordingly, the Commission re-served Subpoena No. LV-17-03 via certified mail upon Respondents on September 18, 2017. (Ex. H, Proof of Re-Service of Subpoena No. LV-17-03).   The Subpoena set the relevant time period for data to be from July 29, 2014 to the present to assess whether Respondents had notice of sexual harassment of prior applicants and whether those who applied after Charging Party were subjected to any improper requests for sexual favors.  The Subpoena sought the following information:

> **Request No. 1:**  Produce an organizational chart, statement, and/or documents (e.g. flow chart) reflecting Respondent's national and/or local organizational/hierarchical structure.
>
> **Request No. 2:** State the total number of persons employed by your organization for each year from 2014 to the present including both full and part-time employees.
>
> **Request No. 3:** Identify and produce all applications for employment, resumes, and/or other documents submitted to Respondent by any person seeking and/or selected for employment from 2014 to the present.
>
> **Request No. 4:** For each applicant or candidate identified in Request No. 3, produce all documents created as part of the selection process including, but not limited to interview notes; photos; reference check documentation; and/or offers of employment.
>
> **Request No. 5:** Identify and produce all documents reflecting job opening announced [sic] by Respondent from 2014 to the present.

---

[6] Respondents are represented by a law firm with offices in Los Angeles and San Diego. The Subpoena was served on the law firm's Los Angeles office and signed for by an employee there. However, the attorney assigned to Respondents' case is located in the law firm's San Diego office, and claimed she never received the Subpoena.  In the abundance of caution, the Commission decided to re-serve the Subpoena to the law firm's San Diego office.

**Request No. 6:** For each job opening identified in Response No. 5, identify and produce the job description and rate of pay.

**Request No. 7:** For each job opening identified in response to Request No. 5, identify by name and job title each person who participated in the recruitment, screening, interview, and/or hiring process and for each job opening, identify the person who made the final decision regarding whether the applicant would proceed to the next step in the hiring process.

**Request No. 8:** Identify and produce data from Respondent's payroll service provider which lists all employees Respondent hired from 2014 to the present, and for each employee, including the following data in an electronic format:
    a. Complete legal name;
    b. Position/title;
    c. Dates of employment;
    d. Sex;
    e. Last known residential address;
    f. Last known home/cellular telephone number(s); and
    g. Personal email address.

**Request No. 9**: Identify and produce all documents reflecting any and all formal and/or informal complaints about Respondent's hiring process and/or harassment, including but not limited to written complaints; notes regarding verbal complaints; documents reflecting the investigation; memoranda; witness statements; interview notes; recommended responses to the complaint; documents reflecting all coaching, training, and/or discipline resulting from the complaint; and all correspondence pertaining to the complaint, investigation, and response to the complaint.

**Request 10:** Identify and produce the complete personnel file including any and all formal and informal departmental and desk files, or notes kept by any manager and/or supervisor for each of the following persons:
    a. Abe Ismail, Promotions Manager;
    b. Gerald Pacheco, Director of Operations;
    c. Mike LNU (last name unknown), Manager;
    d. Ismail Saleem; and
    e. Katie Clayton, Charging Party

**Request No. 11:** Identify and produce any and all communications exchanged via Respondent's electronic mail systems and/or other communications systems pertaining to the Charging Party.

**Request No. 12:** Identify and produce all contracts and/or documents reflecting any agreements between Respondent and the Bellagio.

**C. Respondents' Delay and Failure to Respond has Obstructed the EEOC's Investigation.**

Rather than complying with the Subpoena, Respondents filed their Petition to Modify/Revoke Subpoena No. LV-17-03 on September 25, 2017. (Ex. I, Petition to Modify/Revoke Subpoena No. LV-17-03).[7]   On January 24, 2018, the Commission denied the Petition, finding that Respondents must comply with the Subpoena in its entirety. (Ex. J, Determination on Petition to Modify/Revoke Subpoena No. LV-17-03 and proof of service). Respondents were provided a copy of the Determination and was given until February 28, 2018 to comply with the Subpoena. *Id.* at 27:9-12.

On February 23, 2018, Respondents requested an additional two weeks, which was up to and including March 14, 2018, to respond to the Subpoena.  (Ex. K, Respondents' Feb. 23, 2018 Email to the EEOC). The Commission granted the request. (Ex. L, EEOC's Feb. 23, 2018 Response to Respondents).  On March 12, 2018, Respondents informed the EEOC that it intended on producing a large volume of documents in response to the Subpoena by March 14, 2018 and discussed the best medium to produce the documents. (Ex. M, Respondents' March 12, 2018 Email to the EEOC).  On March 14, 2018, Respondents provided another incomplete response to the Subpoena. (Ex. N, Respondents' March 14, 2018 Letter to the EEOC). Respondents produced communications from Charging Party's private counsel in response to request eleven for all communications pertaining to Charging Party. Respondents produced a list of current employees with some of their contact information, but the list is missing many employee phone numbers and all email addresses as sought in request eight. Respondents also produced General Manager Ismail Saleem's personnel file in response to request number ten. However, the remaining requests remained outstanding.

On March 20, 2018, the EEOC asked Respondents for the status of the remaining responsive documents. (Ex. O, EEOC's March 20, 2018 Email to Respondents). Respondents failed to respond. (Decl. of Cnsl. at ¶11).  Almost a month later, on April 16, 2018, Respondents

---

[7] Respondents provided its number of employees in 2016 in its Petition to Revoke.

produced a thumb drive containing a list of job openings and job descriptions from 2014 to 2016 in response to request number five and six, which seeks Respondents' job openings, job descriptions, and rates of pay from July 29, 2014 to the present. (Ex. P, Respondents' April 16, 2018 Letter to the EEOC). The thumb drive also contained several other files the EEOC was unable to open. (Decl. of Cnsl. at ¶12). The EEOC again inquired regarding the status of the remaining responsive information as well as the additional data on the thumb drive, but did not receive a reply. (Ex. Q, EEOC's April 19, 2018 Email to Respondents). Accordingly, on April 23, 2018, the EEOC sent a letter to Respondents notifying them of the information still outstanding, and giving Respondents until April 30, 2018 to fully comply with the Subpoena. (Ex. R, EEOC's April 23, 2018 Letter to Respondents).

On April 30, 2018, Respondents submitted another incomplete production of documents to the EEOC, along with a document listing their written responses. (Ex. S, Respondents' April 30, 2018 Letter to the EEOC and Further Responses to Subpoena LV-17-03). Respondents produced a chart purportedly in response to subpoena request number one, which asked for an organizational chart reflecting Respondents' hierarchical structure. However, the document produced only contains two boxes: a box containing the name SBE Restaurant Group, LLC, and another box directly beneath it containing the name Spoonful Management, LV, LLC. The document does not contain any information regarding each company's organizational structure, i.e., management officials who are part of the decision-making process as to establishing anti-discrimination policies, personnel matters, discipline, and terminations. Even though request number three seeks all application documents for persons seeking employment from July 29, 2014 to the present, Respondents only produced Charging Party's employment interest sheet and resume. Respondents also failed to address why they refused to produce documents for all applicants in their written responses. *Id.* at 2. In response to request four, which sought all job selection documents for applicants from July 29, 2014 to the present, Respondents claimed it had already produced "all responsive, non-privileged documents in its possession, custody, or control" on May 5, 2017. *Id.* However, on May 5, 2017, Respondents provided no responsive documents, and in their written response, objected to the overbreadth of the scope of the request

and then simply stated it hired no one from the pool of applicants in July 2016. Respondents did not address job selection from 2014, 2015, or 2017 whatsoever.

Respondents claimed it complied with requests five and six for job openings, their job descriptions and rates of pay from July 29, 2014 to the present. *Id.* at 3. It is true Respondents produced job openings and job descriptions from 2014 to part of 2016 on April 16, 2018. However, Respondents failed to produce job openings and their descriptions for the remainder of 2016 and 2017. Respondents also failed to produce any rates of pay for their job openings for the relevant time frame.  In response to request seven, which seeks the name and job title for each person who participated in the job selection process from July 29, 2014 to present, Respondents only provided the names of the managers involved with the job fair in which the Charging Party participated in July 2016. Respondents provided their employee list as sought in request eight, but failed to include many telephone numbers and omitted all employee email addresses.

Respondents also claimed it produced all "responsive, non-privileged documents" in response to request nine for all harassment and hiring practice complaints, but it produced absolutely nothing during the EEOC's many attempts to obtain compliance. *Id.* at 4. In response to request number ten for the personnel files of the Charging Party, her alleged harasser, and the managers involved in the interview and selection process, Respondents produced the personnel files for Director of Operations Gerald Pacheco and General Manager Mike Hernandez. However, Respondents redacted both individual's contact information from the documents. Respondents claimed that it produced Promotions Manager Abe Ismail's file on May 5, 2017. *Id.* at 4. However, all Respondents produced at that time were three sheets of paper indicating that Mr. Ismail completed harassment training in 2015 and 2016. Respondents also produced their communications with Charging Party and the text messages between Charging Party and Promotions Manager Abe Ismail where he attempts to solicit sexual favors in response to request number eleven for all communications pertaining to Charging Party. However, Respondents redacted large portions of the text messages without any explanation or attempt to establish that the communications between Charging Party and Mr. Ismail were privileged or confidential. *Id.* at 5.

In response to request twelve for all documents reflecting any agreements between Respondents and the Bellagio Hotel and Casino, Respondents replied that "Bellagio has never employed or trained Respondent's employees. Upon information and belief, Bellagio representative have no personal knowledge in the operative charge of discrimination or the training of the Charging Party or putative class members." *Id*.

### D. Despite the EEOC's Effort to Encourage Respondents' Voluntary Compliance with the Subpoena, Several Categories of Documents Remain Outstanding.

Even though Respondents have incrementally produced some documentation in response to the EEOC's Subpoena, Respondents have failed to fully comply. Respondents failed to provide a complete response to request number one for an organizational chart, opting instead to produce a page containing two boxes with the name of the parent company and its subsidiary. Typically, organizational charts contain at a minimum, the names and job titles of executives and managers and show the lines of authority within the organization. Respondents also never fully complied with request number two, for the number of their employees from July 29, 2014 to the present, because it only provided the number of their employees for 2016 and 2017. Besides producing Charging Party's employment interest form and resume, Respondents provided no documentation in response to request numbers three and four, which asks for all application documents and documents created as part of the selection process from July 29, 2014 to the present. Respondents produced job openings and their descriptions from 2014 to part of 2016 in response to request numbers five and six, but failed to produce job openings or job descriptions for the rest of 2016 through 2017. Respondents also failed to produce any rates of pay for their job openings during the relevant time frame. Respondents only identified the officials involved in job selection and hiring for the position for which Charging Party applied, but not for other job openings from July 29, 2014 through present, as requested in request seven. Although Respondents provided an employee list in response to request number eight, the list is incomplete, as it fails to include many employees' telephone numbers and all their email addresses.

Respondents also failed to produce any documents responsive to request number nine, seeking all harassment and hiring process complaints. Respondents produced the personnel files

for three of the managers listed in request ten, but failed to provide the complete personnel file for Promotions Manager and alleged harasser Abe Ismail. Instead, Respondents only produced three pages reflecting that Mr. Ismail attended a sexual harassment training in 2015 and 2016. Respondents produced communications and text messages regarding the Charging Party as sought in request number eleven, but it unjustifiably and inexplicably redacted large portions of the text messages between the Charging Party and her alleged harasser. Finally, Respondents failed to produce any documents responsive to request twelve for all documents reflecting any agreements between Respondents and the Bellagio Hotel and Casino. Thus, Respondents latest response is still woefully non-compliant with the Subpoena.

### III.   ARGUMENT

**A.   ENFORCEMENT OF THE EEOC SUBPOENA IS WARRANTED BECAUSE THE EEOC HAS SATISFIED THE REQUIREMENTS FOR AN ENFORCEABLE SUBPOENA.**

According to the Ninth Circuit, the judicial review of an EEOC's subpoena is limited. The Ninth Circuit explained that:

> The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow.  The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether the procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.

*EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (citations omitted); *see also EEOC v. Shell Oil Co.,* 466 U.S. 54, 72 n. 26 (1984).  The judicial inquiry is narrow because "judicial review of early phases of an administrative inquiry results in interference with the proper functioning of the agency and delays resolution of the ultimate question whether the Act was violated." *Fed. Exp. Corp.*, 558 F.3d at 848, 849 (citing to *Shell Oil Co.*, 466 U.S. at 81 n. 38).

Here, the Court should grant the EEOC's application as EEOC acted within its statutory authority and met the procedural requirements for issuance of a valid subpoena.  Moreover, the

evidence subpoenaed is relevant and material to the investigation.  Therefore, enforcement of the EEOC's Subpoena No. LV-17-03 is warranted.

### 1.    The EEOC Acted within its Statutory Authority.

Congress has authorized and indeed mandated that the EEOC investigate charges of discrimination that violate Title VII.  42 U.S.C. § 2000e-5(b).  Further, Congress has vested the Commission with broad powers to fulfill its investigatory responsibilities, authorizing the EEOC to subpoena any information "that relates to any matter under investigation or in question."  29 U.S.C. § 161 (incorporated into Title VII, 42 U.S.C. § 2000e *et seq.*, by § 710, 42 U.S.C. § 2000e-9); *see* 42 U.S.C. § 2000e-5, as referenced in 42 U.S.C. § 2000e-8(a).

Here, the EEOC is investigating the Charging Party's allegations that Respondents sexually harassed and retaliated against her and similarly situated individuals in violation of Title VII.  (Ex. A, Clayton's Charge of Discrimination; Ex. B, Clayton's Amended Charge of Discrimination).   The evidence subpoenaed by the Commission directly relates to the EEOC's investigation of the Charging Party's allegations.  Therefore, the EEOC acted within its statutory authority by issuing the Subpoena.

### 2.    The EEOC Fulfilled all Procedural Prerequisites for the Issuance of the Subpoena Served on Respondents.

An enforceable subpoena requires a valid charge and must also be procedurally valid. *Shell Oil Co.*, 466 U.S. 65.  A valid charge must contain (1) the names and contact information of the charging party(s) and respondent employer; (2) a statement of the facts with dates alleging unlawful employment practices; (3) if known, the approximate number of employees of the respondent employer; and (4) if applicable, disclosure of the date and location of proceedings involving the same alleged conduct before another agency.  29 C.F.R. § 1601.12.  A valid charge must also contain the charging party(s) written statement identifying the parties and generally describing the allegations.  *Id*.  An EEOC administrative subpoena must "state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested."  29 C.F.R. § 1601.16.  Additionally, the

1    subpoena must be returnable to a duly authorized investigator or other representative of the

2    Commission.  *Id.*

3         Here, the Charging Party's original and amended charges include the names and contact

4    information for herself and her employer, the approximate number of employees, and a statement

5    of facts identifying the parties and generally describing the alleged unlawful employment

6    practices.  (Ex. A, Clayton's Charge of Discrimination; Ex. B, Clayton's Amended Charge of

7    Discrimination; Ex. D, Clayton's Second Amended Charge of Discrimination).  Therefore, her

8    charges satisfy all the necessary requirements for a valid charge. Further, the EEOC's Subpoena

9    states the name and address of the agency issuing the subpoena, identifies the Respondents as the

10   party subpoenaed, and identifies with specificity the documents and information to be produced

11   and the time and place of production.  (Ex. G, EEOC's Subpoena No. LV-17-03 with proof of

12   service).  The Subpoena is also returnable to a duly authorized EEOC Investigator. *Id.* Therefore,

13   the EEOC's Subpoena is enforceable.

14        **3.       The Documents and Information Subpoenaed by the EEOC are Relevant**

15                   **and Material to its Investigation of Claims of Sexual Harassment and**

16                   **Retaliation.**

17        Section 709(a) of Title VII of the Civil Rights Act grants the EEOC broad investigatory

18   powers.  42 U.S.C. § 2000e-8(a); *EEOC v. McLane Co., Inc. v. EEOC*, 857 F.3d 813, 815 (2017);

19   *EEOC v. Dean Witter Co., Inc.*, 643 F.2d 1334 (9th Cir. 1980).  The statute permits access to

20   "any evidence of any person being investigated . . . that relates to unlawful employment practices

21   covered by this subchapter and is relevant to the charge under investigation."  42 U.S.C. § 2000e-

22   8(a).  The term "relevant" as used in Section 709(a) encompasses "virtually any material that

23   might cast light on the allegations against the employer."  *EEOC v. Shell Oil Co.,* 466 U.S. 54,

24   68-69 (1984); *EEOC v. McLane Company, Inc.*, 857 F.3d 813, 815 (9th Cir. 2017); *EEOC v.*

25   *Federal Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2008).  Thus, the relevancy standard that applies

26   to an EEOC investigation is broader than the relevancy standard that applies during litigation.

27   *McLane*, 857 F.3d at 815; *EEOC v. Federal Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2008); *Valley*

28   *Industrial Services v. EEOC*, 570 F. Supp. 902, 906-907 (N.D. Cal. 1983).

> The relevance limitation imposed by § 2000e–8(a) "is not especially constraining." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). **The question is not whether the evidence sought would tend to prove a charge of unlawful discrimination.** At the investigative stage, the EEOC is trying to determine only whether "reasonable cause" exists "to believe that the charge is true." 42 U.S.C. § 2000e–5(b). So the relevance standard in this context sweeps more broadly than it would at trial.

*McLane*, 857 F.3d at 815 (Emphasis added).

Enforcement of an EEOC administrative subpoena is not contingent upon some threshold of proof that the underlying charge is meritorious. "[T]he [EEOC] may insist that the employer disgorge any evidence relevant to the allegations of discrimination contained in the charge, regardless of the strength of the evidentiary foundation of those allegations." *Shell Oil Co.*, 466 U.S. at 72; *see also EEOC v. Chrysler Corp.*, 567 F.2d 754, 755 (8th Cir. 1977) ("[r]easonable cause for finding a Title VII violation need not be established before an administrative subpoena may be validly issued."). Rather, the function of such investigative subpoenas is to establish whether there is reasonable cause for the allegations of discrimination. *Chrysler Corp.*, 567 F.2d at 755.

Moreover, "the EEOC's investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the charge, but any information that is relevant to the charge." *EEOC v. Kronos*, 620 F.3d 287, 299 (3rd Cir. 2010). Thus, the EEOC can even investigate potential claims not specifically alleged in the underlying the charge, or seek claimants who did not themselves file a charge. *EEOC v. Roadway Exp., Inc.*, 750 F.2d 40, 43 (6th Cir. 1984) (allowing investigation into information "concerning employment practices other than those specifically charged by complainants"); *EEOC v. Dinuba Medical Clinic*, 222 F.3d 580 (9th Cir. 2000); *Blue Bell Boots v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969); *Georgia Power Co. v. EEOC,* 412 F.2d 462, 468 (5th Cir. 1969). Data regarding employees other than the Charging Parties also provides important comparative information that "is absolutely essential to a determination of discrimination." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994); *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 642 (6th Cir. 2001).

Here, Charging Party alleges she was subjected to sexual harassment and retaliation, in violation of Title VII. (Ex. A, Clayton's Charge of Discrimination).  Specifically, Charging Party alleges that shortly after interviewing with a manager named "Mike," (later identified as General Manager Mike Hernandez), she received text messages from a Promotions Manager named Abe Ismail offering the job in exchange for sexual favors. *Id.*  Mr. Ismail's text messages also asked Charging Party for nude photographs he could share with Director of Operations Gerald Pacheco and General Manager Ismail Saleem.  Charging Party further alleges that she refused the Promotions Manager offer and was not hired for the Cocktail Waitress Position. *Id.* Charging Party also alleges systemic discrimination, in that she makes her sexual harassment and retaliation claims on behalf of a class of individuals. (Ex. B, Clayton's Amended Charge of Discrimination.).

Each of the outstanding Subpoena requests seek evidence that "casts light" on the allegations the Charging Party made against Respondents.  Request numbers one (organizational chart) and twelve (contracts between Respondents and Bellagio Hotel) seek organizational information relevant to the charge.  Respondents produced a chart that seemingly identifies SBEEG Holdings, LLC as the parent company and Spoonful Management LV, LLC as the subsidiary. However, the chart omits other relevant organizational information, namely the name and job titles of managers and lines of reporting between and among both Respondents.  In addition, obtaining any agreements between Respondents and Bellagio Hotel and Casino will enable the Commission to determine whether their contractual relationship provided the opportunity for the Bellagio to intervene regarding harassment, and/or whether the contract has any provisions that relate to standards set by the Bellagio as to the night club on its premises. Respondents claim that the Bellagio Hotel and Casino "has never employed or trained Respondent's employees" and is unaware of the discrimination are insufficient.  (Ex. S, Respondents' April 30, 2018 Letter and Further Responses to Subpoena LV-17-03 at 5). The EEOC must review the agreements and make its own determination regarding whether Bellagio Hotel and Casino is a joint employer whose contractual rights suggest it should have known about the harassment, hiring process, and/or whether the Bellagio required any specific standards in

1   who was hired and how night club employees were hired - "the EEOC does not have to take

2   [Respondents'] word for it on that score." *EEOC v. McLane*, 857 F.3d 813, 816 (9th Cir. 2017).

3         Respondents previously provided their total number of employees for 2017 in response

4   to the RFI, and provided their employee number for 2016 in their Petition to Modify/Revoke in

5   response to request two (total number of employees from 2014 to the present). However,

6   Respondents failed to produce their number of employees for 2014 and 2015. Request two is

7   relevant to the investigation because the Commission must verify the number of employees to

8   ensure that it has jurisdiction to investigate the charge. It is also relevant to what damages cap

9   Respondents may be subject to if the Commission made a cause finding. 42 U.S.C. § 1981a(b)(3)

10   (damages cap determined by number of employees for current or preceding calendar year).

11   Additionally, Respondents' number of employees for the years 2014 and 2015 are also relevant

12   to determining jurisdiction and potential liability for potential class members, as Charging Party

13   also alleges systemic discrimination.

14         Request numbers three (job applications and related documents) and four (documents

15   produced as part of the interview and selection process) for all applicants from 2014 to the present

16   will enable the Commission to determine whether Respondents made decisions to hire/not hire

17   applicants based on their willingness to engage in sexual acts, as Charging Party alleges. Requests

18   three (job applications and related documents), along with request numbers five (announcements

19   for job openings) and six (job description and rate of pay) are also relevant to determining

20   whether any potentially aggrieved individuals were similarly situated to Charging Party because

21   they applied for the same or similar jobs with the same or similar rates of pay. Obtaining the

22   names and job titles of those involved in the hiring process for all applicants from July 29, 2014

23   to the present, as sought in request seven, will enable the Commission to determine the veracity

24   of Charging Party's claim that Respondents offered jobs to similarly situated applicants in

25   exchange for sexual favors.

26         As discussed above, Respondents provided their employee list in response to request

27   eight, but omitted many employees' phone numbers and did not provide any email addresses.

28   The Ninth Circuit has held that this employee contact information, or "pedigree information," is

relevant to an investigation. *EEOC v. McLane Co., Inc.,* 857 F.3d 813, 815 (9th Cir. 2017). In *McLane*, the EEOC sought employee contact information so it could contact other employees regarding their experiences with the employer. *Id.* at 814-5. The court held this inquiry was relevant because it could "cast light" on whether the allegations against the employer were true. *Id.* at 815. Similarly, the EEOC seeks Respondents' employee contact information so it can discuss their experiences with Respondents. Specifically, the Commission seeks to glean whether other employees have experienced or witnessed sexual harassment or retaliation. Such information would "cast light" on the veracity of Charging Party's allegations. Moreover, the Commission could determine whether the claim the Promotions Manager made to Charging Party, that other women who worked for Respondents were hired only after performing sexual acts for male managers, is true. Thus, the Commission's request for Respondents' employees' contact information is wholly relevant. The information sought in request eight also provides important comparator information that is relevant to whether Charging Party herself was treated differently.

Request nine (harassment and hiring process complaints) is relevant because it "casts light" on whether Respondents have engaged in systemic sexual harassment and retaliation during their application and hiring process. While Respondents produced the personnel files of Director of Operations Gerald Pacheco and General Manager Ismail Saleem as sought in request ten, it only produced three pages from Promotions Manager and alleged harasser Abe Ismail's personnel file. Promotions Manager Ismail's complete personnel file is relevant because it may contain information regarding whether other applicants or employees have complained to Respondents about his harassing behavior, especially in light of his claims that female applicants frequently performed sexual favors in exchange for employment. Any other harassment complaints against Promotions Manager Ismail are also relevant to whether Respondents had notice of systemic sexual harassment and retaliation prior to Charging Party's complaint but failed to take action.

Respondents produced text messages between Charging Party and Promotions Manager Abe Ismail in response to request eleven (all communications pertaining to Charging Party), but

heavily redacted them without providing an explanation or demonstrating that the redacted material is privileged. Request eleven is relevant to determining the veracity of Charging Party's allegations that Promotions Manager Ismail offered her a job in exchange for sexual favors. Moreover, Productions Manager Ismail's claims in the messages that other female applicants performed sexual favors in exchange for employment is also relevant to Charging Party's claim of systemic sexual harassment.

The Court should therefore enforce the EEOC's Subpoena because the EEOC acted within its statutory authority, the subpoena is procedurally valid, and the information sought is relevant and material to the investigation.

**B.      THE SUBPOENA IS REASONABLE AND NOT OVERBROAD.**

**1.      The Subpoena is not Temporally Overbroad.**

Respondents repeatedly limited the data it provided in response to Subpoena requests that sought data seeking information regarding systemic discrimination. Specifically, Respondents only provided their number of employees for 2016 and 2017, but not for 2014 and 2015 as sought in request two.  Respondents only produced Charging Party's application and resume, even though requests three and four ask for all applications and job selection documents for 2014 to the present. In response to requests five and six, Respondents produced job openings and job descriptions from 2014 to part of 2016, but failed to produce the job openings and descriptions for the remainder of 2016 to 2017, or the rates of pay. Respondents failed to provide the names of all employees involved in recruitment and hiring from 2014 to 2017, limiting their response to those involved in the selection process for the job which Charging Party applied instead. While Respondents did not articulate their rationale for failing to produce all the data, it previously objected that the Subpoena is unreasonable and overbroad. (Ex. I, Petition to Revoke/Modify at 2:6-8, 17-19 3:12-14; 4:8-10; 5:5-7, 26-2; 6:22-25; 7:25-27).  The time period before Charing Party's application is relevant to assess if Respondents has prior notice of similarly improper hiring practices. Moreover, the time period after Charging Party's application is relevant to assess what if any measures Respondents adopted to prevent and correct harassment.

Once the EEOC has established relevancy, "the burden shifts to Respondents to prove the evidence sought is "unreasonable because it is overbroad." *EEOC v. Fisher Sand & Gravel, Co*., 2012 WL 3996138 at *3 (D. Nev. Sept. 11, 2012) *citing EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428 (9th Cir. 1983) *overruled on other grounds as recognized in Prudential Ins. Co v. Lai*, 42 F.3d. 1299,1303 (9th Cir. 1994). The EEOC established in the previous section that its Subpoena requests are relevant, which shifts the burden to Respondents to establish they are overbroad. Respondents have failed to meet that burden in both their Petition to Revoke and their latest responses to the EEOC's Subpoena.

When an individual brings a charge that "raises the specter of systemic discrimination, the EEOC has authority to investigate charges of discrimination beyond the alleged individual discrimination specifically committed against [the charging party]." *EEOC v. Fed. Exp. Corp*., 558 F.3d 842, 855 (9th Cir. 2008).  Because Charging Party's allegation "raises the specter" that Respondents engaged in systemic discrimination, it is reasonable for the Commission to seek information sought in the Subpoena regarding potential discrimination beyond Charging Party's alleged individual discrimination. Moreover, Respondents have provided no contrary evidence or justification to establish the Subpoena requests for information regarding systemic discrimination is overbroad.

The Commission may also reasonably seek pre-charge and post-charge data to determine whether systemic discrimination occurred.  *Fisher Sand & Gravel*, 2012 WL 3996138 at *3; *EEOC v. Roadway Express, Inc*., 261 F.3d 634, 642 (6th Cir. 2001); *EEOC v. Franklin and Marshall College*, 775 F.2d 110, 116 (3rd Cir. 1985); *Arizona ex rel. Horne v. Geo Group, Inc*., 816 F.3d 1189, 1203 (9th Cir. 2016).  Moreover, many courts have upheld the reasonableness of EEOC subpoenas seeking information for several years pre- and post-charge.  *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47-48 (6th Cir. 1994) (upholding subpoena seeking information from almost four years prior to the charge); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 474-475, 478 (4th Cir. 1986), *cert. denied*, 479 U.S. 815 (1986) (upholding subpoena seeking information for more than three years prior to the charge); *EEOC v. Aaron's, Inc*, 779 F. Supp.2d 754, 759 (N.D. Ill. 2011) (upholding a subpoena seeking information spanning two years prior

to and two years after the charging party's termination); *Fisher Sand & Gravel, Co.*, 2012 WL 3996138 at *3 (upheld subpoena seeking information for time frame that included two years after the charging party's termination).

Here, Charging Party's class allegation makes it reasonable for the Subpoena to seek pre- and post-charge information to further determine whether Respondents have engaged in systemic sexual harassment and retaliation. The Subpoena's three-year time frame is also consistent with the time frames upheld by several courts. *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47-48 (6th Cir. 1994) (upholding subpoena seeking information from almost four years prior to the charge); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 474-475, 478 (4th Cir. 1986), *cert. denied*, 479 U.S. 815 (1986) (upholding subpoena seeking information for more than three years prior to the charge); *EEOC v. Aaron's, Inc*, 779 F. Supp.2d 754, 759 (N.D. Ill. 2011) (upholding a subpoena seeking information spanning two years prior to and two years after the charging party's termination); *Fisher Sand & Gravel, Co.*, 2012 WL 3996138 at *3 (D. Nev. Sept. 11, 2012) (upheld subpoena seeking information for time frame that included two years after the charging party's termination).

Accordingly, the Subpoena requests are reasonable and not overbroad, especially in light of Charging Party's allegations of systemic harassment. The Subpoena should therefore be enforced.

## C. DISCLOSURE OF CONFIDENTIAL INFORMATION REQUESTED IN THE EEOC'S SUBPOENA IS PROPER AND FEDERAL STATUTES PROTECT ANY IMPLICATED PRIVACY RIGHTS.

Respondents redacted the contact information contained in the personnel files it produced in response to request ten, and heavily redacted text messages between Charging Party and alleged harasser Abe Ismail in response to request eleven. Respondents have no basis to redact this information because personnel and other confidential information are subject to the EEOC's subpoena power. "[C]onfidentiality is no excuse for noncompliance [with an EEOC subpoena] since Title VII [of the Civil Rights Act of 1964] imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment

discrimination." *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981).   The EEOC may compel the production of personnel and other confidential documents because Title VII imposes strict duties on the Commission and its employees to maintain the confidentiality of such information during investigations and informal endeavors to conciliate:

> Nothing said or done during and as a part of such informal endeavors [of conference, conciliation, and persuasion] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both.
>
> …
>
> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

42 U.S.C. §§2000e-5(b) and 2000e-8(e).

The EEOC and its employees are also prohibited from disclosing a company's trade secrets or confidential commercial information:

> Whoever, being an officer or employee of the United States or of any department or agency thereof…publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof

to be seen or examined by any person except as provided by law;
shall be fined under this title, or imprisoned not more than one
year, or both; and shall be removed from office or employment.

18 U.S.C. § 1905. Relying on these statutory provisions, the Supreme Court rejected a university's argument that a court could require the EEOC to show more than relevance as a condition to obtain confidential materials.  *Univ. of Pa. v. EEOC*, 493 U.S. 182, 192 (1990).  The Court noted the statute establishes no privilege to protect employees' privacy: "Congress did address situations in which an employer may have an interest in the confidentiality of its records" by making it unlawful under federal statute to disseminate the information.  493 U.S. at 192. Likewise, the Ninth Circuit recently rejected an employer's use of employee privacy concerns as justification for its refusal to produce personnel information in response to an EEOC subpoena. *McLane Co. Inc*., 804 F.3d 1056,1058 (9th Cir. 2015), *vacated on other grounds by McLane Co., Inc. v. EEOC*, 137 S.Ct. 1159 (2017).    In *McLane*, the employer argued it could withhold employee social security numbers to protect its employees' privacy interests. *Id*.  The court disagreed, finding that "Congress has struck the balance between granting the EEOC access to relevant evidence and protecting confidentiality interests by imposing strict limitations on the public disclosure of information produced during the course of an EEOC investigation." *Id*.  An employer's "dissatisfaction with that balance does not entitle it to withhold information relevant to a charge of discrimination." *Id*.

Other courts have likewise ordered respondents to provide the EEOC with information that they have described as privileged or confidential, such as employees' personnel files, *EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 150 (S.D.N.Y. 2000), personnel files of government employees and other government records protected from disclosure by state statute, *EEOC v. Ill. Dep't of Employment Sec.*, 995 F.2d 106, 107-09 (7th Cir. 1993); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247, 1256-58 (E.D. Wis. 1996); *EEOC v. City of Orange*, 905 F. Supp. 381, 382 (E.D. Tex. 1995); *EEOC v. County of San Benito*, 818 F. Supp. 289, 291 (N.D. Cal. 1993); *EEOC v. County of Hennepin*, 623 F. Supp. 29, 33 (D. Minn. 1985), confidential information pertaining to managers and executives, *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981), records and reports of patient abuse, disclosure of which is prohibited

by state law, *EEOC v. St. Louis Developmental Disabilities Treatment Ctr.*, 118 F.R.D. 484, 486-87 (E.D. Mo. 1987), records pertaining to prior allegations of race or sex discrimination in the organization, *Morgan Stanley & Co.*, 132 F. Supp. 2d at 150, and other documents, *EEOC v. Roadway Express, Inc.*, 750 F.2d 40, 43 (6th Cir. 1984).

Finally, while some states recognize a right to privacy over some business or personnel information, the EEOC's federal mandate preempts any such state laws. *Garrett v. City and County of San Francisco*, 818 F.2d. 1515, 1519 n.6 (9th Cir. 1993); *EEOC v. County of San Benito*, 818 F. Supp. 289, 291 (N.D. Cal. 1993). Additionally, to the degree there exists a federal right to privacy over some information, the EEOC's Subpoena would not implicate any such protections because the information requested is relevant to an investigation authorized by federal statute. *See EEOC v. University of New Mexico*, 504 F2d. 1296, 1303 (10th Cir. 1974).

Here, Respondents redacted identifying and contact information from the personnel files of General Manager Mike Hernandez, General Manager Ismail Saleem, and Director of Operations Gerald Pacheco (request ten), in an apparent attempt to preserve confidentiality. However, as both the Supreme Court and the Ninth Circuit have noted, Congress addressed concerns with confidentiality and privacy by enacting federal statutes prohibiting the EEOC from disseminating any private or confidential information and commercial documents. *Univ. of Pa. v. EEOC,* 493 U.S. 182, 192 (1990); *McLane Co. Inc.*, 804 F.3d at 1058, *vacated on other grounds by McLane Co., Inc. v. EEOC*, 137 S.Ct. 1159 (2017). Thus, Respondents may not redact information from personnel files under the guise of preserving an employee's privacy rights or confidentiality.

Respondents also redacted much of the content of the text messages between Charging Party and her alleged harasser, apparently due to a belief that some of their communications are somehow privileged. (*See* Ex. I, Petition to Revoke/Modify at 1:23-24; 9:11-13). It is true that the EEOC's subpoena powers are subject to recognized privileges, such as the attorney-client privilege. *EEOC v. American Apparel, Inc.*, 327 Fed. Appx. 11, 12-15 (9th Cir. 2009). However, the party asserting a privilege has the burden of showing it applies in the circumstances. *Dole v. Milonas*, 889 F.2d 885, 889 (9th Cir. 1989); *EEOC v. Wal-Mart Stores East, LP*, 2013 WL

8117477 at *11 (E.D. Ky., Nov. 8, 2013), *objections sustained in part and overruled in part by EEOC v. Wal-Mart Stores East LP*, 2014 WL 1159786 (E.D. Ky. March 17, 2014).  A party demonstrates a privilege applies by conveying some information about the content of the alleged privileged material, such as by producing a privilege log, furnishing summaries of unprivileged information, or by redacting such privileged information.  *Dole*, 889 F.2d at 890; *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont*., 408 F.3d 1142, 1148 (9th Cir. 2005).  General, boilerplate objections are not a proper method of asserting a privilege because they do not convey any information regarding the content of the privilege.  *Burlington Northern,* 408 F.3d at 1148.

Here, Respondents provide no information to establish that the attorney-client or other privilege applies to the redacted text messages. Further, it highly unlikely any privilege applies to these messages because the only parties communicating in the messages were the Charging Party and her alleged harasser, who did not have an attorney-client relationship.  Moreover, the content of the messages is not confidential, as the exchange solely consists of alleged harasser Abe Ismail pressuring Charging Party to perform sexual favors in exchange for the Cocktail Waitress position.  Thus, Respondents will be unable to establish that the attorney-client or other privilege prevents full compliance with request number eleven.

**D.    RESPONDENTS CANNOT ESTABLISH THAT COMPLIANCE WITH THE EEOC'S SUBPOENA IS UNDULY BURDENSOME.**

Once the EEOC has established that its subpoena is procedurally valid and relevant to its investigation, the subpoena is enforceable unless the employer demonstrates that the requests are unduly burdensome.  *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428 (9th Cir. 1983) *overruled on other grounds as recognized in Prudential Ins. Co v. Lai*, 42 F.3d. 1299,1303 (9th Cir. 1994); *McLane Co. Inc.*, 804 F.3d at 1056, *vacated on other grounds by McLane Co., Inc. v. EEOC*, 137 S.Ct. 1159 (2017); *EEOC v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002).  The undue burden objection is satisfied where compliance would threaten the normal operation of an employer's business or where the production the documents would seriously disrupt normal business operations.  *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479

(4th Cir. 1986); *EEOC v. CitiCorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) (rejecting undue burden argument where respondent only showed inconvenience and some expense); *EEOC v. Randstad*, 685 F.3d 433, 452 (4th Cir. 2012) (EEOC administrative subpoena not unduly burdensome  where it required three employees to spend forty hours each reviewing 100,000 job orders at a labor cost of $14,000 to $19,000.). Here, Respondents did not object that the Subpoena is unduly burdensome in their latest response. Even if the Respondents had raised this objection, it would be without merit because the information sought by the Subpoena consists of information readily available to any employer with minimal effort and expense.  Thus, the Subpoena should be enforced because it is not unduly burdensome.

### III.     CONCLUSION

Accordingly, the EEOC respectfully requests the Court enforce Subpoena No. LV-17-03. The EEOC issued the Subpoena pursuant to its statutory authority and satisfied all procedural requirements.  The Subpoena requests seek information and documents relevant and material to its investigation of the Charging Party's claims of sexual harassment and retaliation against herself and similarly situated individuals. The Subpoena is also reasonable and not overbroad. The Commission is entitled to the information Respondents deem private and confidential and federal statutes mandating confidentiality and providing penalties for unauthorized disclosure adequately protect the privacy rights of Respondents and their employees. Respondents also cannot establish that the redacted information is privileged.    Finally, Respondents have not and cannot demonstrate that compliance with the Subpoena will be unduly burdensome.

Dated:  July 5, 2018                                U.S. EQUAL EMPLOYMENT
                                                            OPPORTUNITY COMMISSION


                                            By:     /s/ *Nechole Garcia*
                                                        Nechole Garcia
                                                        Attorney for Respondents EEOC